## HENRY B. ROGERS *versus* CHARLES P. SUMNER. EDWARD A. PEARSON *versus* The Same.

A creditor who has attached several parcels of goods, has a right to levy his execution on either parcel, without regard to the claims of another creditor who subsequently attached only one of the parcels.

Where an officer having collected money on execution refuses to pay it over to the creditor on demand, an action will lie against him before the return day of the execution.

Whether the action would lie before the return day without a demand, *quære.*

In the case of conflicting claims to money collected on execution, the refusal of the execution creditor to give the officer a bond of indemnity for paying over the money, will not be a defence to an action by such creditor against the officer to recover the money.

Where there are such conflicting claims, and the officer, without any sinister motive, retains the money until they are determined, he does not incur the penalty of five times the lawful interest, imposed by *St.* 1783, *c.* 44, § 3, for *unreasonably* neglecting or refusing to pay over money collected on execution.

THESE were actions upon the case, against the sheriff ol Suffolk, for the default of Daniel Parkman, one of his depu ties, in not levying two executions against E. K. Whitaker and A. B. Frothingham, as copartners, upon goods attached upon the original writ. One of the executions was in favor of Rogers, for $513·35, the other, in favor of Pearson, for $1221·47. The declarations contained counts for not paying over on demand, money collected on the executions.

At the trial, before *Wilde* J., it appeared, that on May 17, 1834, goods in a store in Washington street, in Boston, were attached by Parkman as the property of Whitaker and Frothingham, upon writs in favor of several creditors, in the following order, viz. The Franklin Bank, Adams, Rogers, Pearson, — Whitwell, Bond & Co., and William Rider & Co.

Subsequently, on the same day, goods in the office of Pearson in State street, which had been placed in his possession by Whitaker and Frothingham to secure the payment of the two demands of Rogers and Pearson, were attached by Parkman upon the same writs in favor of Rogers and Pearson and upon no others ; and these goods were left in the hands of Pearson, as keeper for Parkman by a written deputation.

and were so returned by Parkman upon the writs.  The nominal value of these goods was $2600.

Afterwards, Whitaker and Frothingham assigned their property for the benefit of their creditors, to Edwards and Foster, subject to the attachments and liens above mentioned.

The goods in Washington street were sold by consent of parties, on mesne process, and the proceeds amounted to $2600 ; out of which Parkman satisfied two executions, in favor of the Franklin Bank and Adams, and a balance of $836 remained in his hands, to be applied to the satisfaction of the claims of the subsequent attaching creditors.

On July 9, 1834, the plaintiffs recovered judgment in their suits against Whitaker and Frothingham, and on the 11th of July their executions were delivered by their attorney, to Parkman, with verbal directions to levy upon the goods attached upon the original writs, and reference was made to the goods in State street.

On July 25th, the proceeds of the goods in Washington street having been received by Parkman, the plaintiffs gave him notice in writing, that they discharged the attachments on the goods in State street, and they directed him to levy their executions forthwith on the goods in Washington street, or the proceeds of the same, if sold by his order.  And immediately thereupon Pearson gave up the goods in State street to the assignees of Whitaker and Frothingham, who claimed the same by virtue of the assignment.

Upon the receipt of the goods the assignees gave an obligation to pay Rogers and Pearson any balance which should remain due upon their executions, after receiving what they might of Parkman.  The amount supposed to be in the hands of Parkman applicable to their executions was $849·47, and $885·35, the supposed balance of their executions, has been paid by the assignees, on their obligation.

In answer to the plaintiffs' notice of July 25th, Parkman wrote on the 26th, that for his protection he must receive an indemnity to save him harmless against the claims of subsequent attaching creditors, whose rights would be essentially impaired by the course proposed by the plaintiffs.  To this the plaintiffs' attorney replied, that his clients declined giving

the indemnity asked for, and insisted on the terms of their notice being complied with ; and that in default thereof, five times the lawful interest, the penalty imposed by *St.* 1783, *c.* 44, § 3, upon a deputy sheriff for unreasonably neglecting or refusing to pay any money received by him on execution, would be exacted.

By a letter of July 29th, Rider & Co. cautioned Parkman against discharging the attachment on the goods in State street, and against levying the plaintiffs' executions in the first instance on the property in Washington street ; and notified him to levy in the first instance on the goods in State street, giving as a reason, that Rider & Co. had an attachment, subsequent to the plaintiffs', on the goods in Washington street, but none on the goods in State street ; and that if the goods in State street were first applied to the plaintiffs' executions, there would remain of the property in Washington street, sufficient to satisfy the execution, when obtained, of Rider & Co. A similar notice was sent to the plaintiffs' attorney, and on the same 29th of July he informed Parkman, by letter, that he had received the note of Rider & Co., and in behalf of the plaintiffs he demanded of Parkman at once to comply with the terms of their notice to him of July 25, and also to pay the plaintiffs the money which Parkman had received on their executions.

Subsequently, on the 29th of July, Parkman went to Pearson's office and found it closed, and was informed that he had left the city ; and on the same day Parkman gave notice, in writing, to the plaintiffs' attorney, that in order to satisfy their executions, he should, without delay, cause the goods in State street, attached on the original writs and subsequently levied on by him, to be sold by auction, to be applied towards the satisfaction of the executions of the plaintiffs, those goods never having been released by him from the original attachments.

These goods have not been given up to Parkman to be levied on, as requested by him, and he holds the balance above mentioned, of the proceeds of the goods attached in Washington street. The parties interested, other than the plaintiffs, gave Parkman an indemnity.

Rogers
v.
Sumner.

The executions in favor of the plaintiffs were returnable into the Court of Common Pleas, in October 1834. The present actions were commenced in September preceding.

The defendant made the following points of defence.

1. That the plaintiffs were bound to have their executions levied first upon the goods in State street, attached upon their writs alone, and not to resort to the other goods, or the avails of them, unless to make good any deficiency after the sale of the goods in State street.

2. That Parkman had a right to keep the executions in his hands until the return day, and that there were no facts in the case which would authorize an action against the sheriff before such return day.

3. That as there were conflicting claims to the property in the hands of Parkman, he had a right to demand and receive of the plaintiffs a bond of indemnity, before he should be subjected to an action in the premises.

4. That Parkman had not any money in his hands received by him upon either of the executions of the plaintiffs, and that there was no demand or refusal to pay, which subjected him to the penalty imposed by *St.* 1783, *c.* 44, § 3, for not paying over the same on demand.

If on these facts the plaintiffs were entitled to recover, judgment was to be entered for such sums as the Court should direct ; otherwise the plaintiffs were to become nonsuit.

*March* 27*th.*  *A. W. Fuller,* for the defendant, cited to the point that the action was premature, *Wilder* v. *Bailey,* 3 Mass. R. 295 ; *Barnard* v. *Ward,* 9 Mass. R. 269 ; *Mather* v. *Green,* 17 Mass. R. 60 ; *Rice* v. *Hosmer,* 12 Mass. R. 127 ; to the point of indemnity, *Perley* v. *Foster,* 9 Mass. R. 112 ; *Bernasconi* v. *Fairbrother,* 7 Barn. & Cressw. 381 ; *Burr* v. *Creethy,* 7 B. Moore, 368 ; and as to damages, *Bayley* v. *French,* 2 Pick. 591 ; *St.* 1822, *c.* 93, § 1.

*E. Blake, contra,* cited to the point of indemnity, *Marshall* v. *Hosmer,* 4 Mass. R. 63 ; *Bond* v. *Ward,* 7 Mass. R. 126 ; *Hallowell &c. Bank* v. *Howard,* 14 Mass. R. 183 ; *Marsh* v. *Gold,* 2 Pick. 291 ; *Fairfield* v. *Baldwin,* 12 Pick. 397.

*April* 4*th*  Per Curiam. The first question is settled in the case of *Parker* v. *Dennie,* 6 Pick. 227. The party who makes the

first attachment on several parcels of property has a right to levy on such portion as he thinks proper, without regard to the claims of subsequent attaching creditors. The plaintiffs therefore had a right to have the property attached in Washington street applied to their executions, so far as it was not wanted for the satisfaction of the executions of the Franklin Bank and Adams.

It is objected that the actions were prematurely brought, having been commenced before the return day of the executions. But where the party is injured by the officer's misfeasance, he is not obliged to wait until that day. Here the officer had the money in his hands, the goods having been sold on mesne process, and it must be considered as having been applied to these executions. In many cases the officer is able very early to obtain the money due upon an execution, and the question is whether he shall pay it over immediately to the creditor, or retain it in his own hands until the return day. It may be questionable whether he is bound to pay it sooner without a demand, but upon a demand being made, we think it is his duty to pay it over. The letter from the plaintiffs' attorney was a sufficient demand, and the plaintiffs are therefore entitled to recover, unless another objection on the part of the defendant shall prevail.

This objection is founded on the plaintiffs' refusal to give Parkman a bond of indemnity. Parkman has money in his hands which the plaintiffs say belongs to them and which they are seeking to recover by action. We are of opinion, that their refusal to give the indemnity requested does not destroy their right to the property, though it may excuse the officer for retaining it until the question of title shall be decided.

The plaintiffs being then entitled to recover, the question is what shall be the amount of the damages. They claim five times the lawful interest, the penalty prescribed by the statute for *unreasonably* neglecting or refusing to pay over money collected on execution. But it was not unreasonable for the officer to retain until the conflicting claims of the plaintiffs and other attaching creditors should be settled. *Bay-ey* v. *French*, 2 Pick. 586. It is not intimated that there was any intentional wrong here, on the part of the officer.

The statute was designed to apply to cases of retaining money from sinister motives.

The plaintiffs will take judgment for the amount of money in the hands of Parkman, with interest at the rate of six per cent. from the time of the demand.